IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELISSA CELMER,                    *
          Plaintiff
                                   *

     v.                            *          Civil Action No. AMD 04-3959
                                   *

JUMPKING, INC., and VICTORIA
ZACHARIA,                          *
          Defendants

                              ***

MEMORANDUM OPINION

This personal injury diversity action arises from a trampoline accident that occurred

on May 1, 2000, in the backyard of defendant Victoria Zacharia ("Zacharia").[1] The plaintiff

is Melissa Celmer ("Celmer"), who was 16 years old when she injured her knee trying to

dismount the trampoline. Defendant Jumpking, Inc., manufactured the trampoline. Celmer

claims (1) Jumpking should be held strictly liable for manufacturing and marketing a

defectively designed trampoline that is unreasonably dangerous, and (2) Zacharia was

negligent in failing to supervise Celmer and in failing to warn her of the dangers of

trampoline use. Discovery has concluded and defendants have filed motions for summary

judgment. A hearing was held on May 23, 2006. For the reasons explained below,

Jumpking's motion shall be granted in part and denied in part, and Zacharia's motion shall

be denied.

---

[1]The case was initially brought against Victoria Zacharia and her husband, Eli Zacharia. Plaintiff dismissed her claims against Mr. Zacharia because he was not home at the time of the accident.

I.

Some time around 1998, the Zacharias purchased as a gift for their children a 14-foot, circular Jumpking trampoline, assembled it, and set it up in their yard in Berlin, Maryland, across the street from the Celmer home. The trampoline came with several warnings, three attached to the trampoline pad, one or more on the frame legs, and one sewn into the canvas mat. The trampoline also came with a placard warning that was initially attached to the trampoline, but apparently had come off by May 1, 2000.

The three warnings that were attached to the pads specifically warned: "Do not allow more than one person on the trampoline. Multiple jumpers increases [sic] chances of loss of control, collision and falling off. This can result in broken head, neck, back and legs." The detached placard also warned of multiple jumping, as did a lengthy warning in the brochure that came with the trampoline. The remaining warnings were either more general or warned of other dangerous activities, such as somersaults.

On the day of the incident, Celmer was taking care of her 12-year-old sister, Kimberly. When Celmer came looking for her younger sister around dinner time, she found her jumping on the trampoline in the Zacharias' yard with another neighbor, Devon Angelona. The two Zacharia children were nearby, but not on the trampoline. Zacharia was in her house and through a window she had observed that Melissa Celmer was in the yard.

As Celmer approached the trampoline, the two kids who were jumping on it encouraged her to join them. Celmer had never been on a trampoline; she decided to try it.

Having not looked for or seen any warnings, Celmer says she did not know multiple jumping was dangerous. She noticed, however, that part of the padding covering the springs was missing. For about five minutes or less, the two Celmer sisters and Angelona jumped on the trampoline at the same time. Melissa Celmer then decided to get off the trampoline, so she asked the others to stop jumping. They apparently did not hear her and continued jumping as she made her way to the side of the trampoline to dismount.

Celmer says she was jarred toward the uncovered spring area of the trampoline-- because the other kids were still jumping-- and her left leg slipped off the trampoline mat into the spring area, with her right leg still on the mat. As she attempted to extract herself from this position, she pulled her right leg over the metal frame of trampoline, thus straddling the trampoline frame. Next, she placed her right leg toward the ground to dismount. In the process, she injured her right knee, suffering a ligament tear and other injuries.[2]

## II.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v.*

---

[2]Celmer states that she "suffered serious injury to her right knee including a torn anterior cruciate ligament and torn meniscus which resulted in multiple surgeries and an implant to replace her ACL." Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 1.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A fact is material for purposes of summary judgment, if, when applied to the substantive law, it affects the outcome of the litigation. *Id*. at 248.  Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Laura Campbell Trust v. John Hancock Life Ins. Co.*, 411 F. Supp. 2d 606, 609 (D. Md. 2006).

III.

Plaintiff asserts two claims. First, she claims that Jumpking, the trampoline manufacturer, should be held strictly liable for her injuries because the trampoline was defectively designed-- both because a safer design that would have likely prevented her injury was available and because the warnings appearing on the trampoline against multiple jumping were insufficient and inadequate. Second, Celmer asserts a negligence claim against Zacharia, namely, for failing to warn her of the danger of "multiple jumping," and for negligently failing to supervise the use of the trampoline by herself and the other youngsters. I will consider each claim in turn.

A.

The parties agree that Maryland law is applicable here. Celmer's strict liability claim rests primarily on her argument that trampolines should be sold only with mesh net

enclosures around them to protect the jumpers.[3] In addition, she contends that Jumpking's warnings to trampoline users of dangerous practices, such as multiple jumping, are insufficient and inadequate, and that therefore the trampoline was defective and unreasonably dangerous.

In cases of this sort, Maryland follows the "consumer expectation test," in which a plaintiff alleging strict liability for a product defect in a consumer product must show the following: (1) the product was in a defective condition at the time that it left the possession or control of the seller; (2) it was unreasonably dangerous to the user or consumer; (3) the defect was the cause of the injuries; and (4) the product was expected to and did reach the consumer without a substantial change in its condition. *Phipps v. General Motors* Corp., 278 Md. 337, 341 (1976).

A "defective condition" is a "condition not contemplated by the ultimate consumer." *Halliday v. Sturm, Ruger & Company, Inc.*, 368 Md. 186, 193 (2002) (quoting Restatement (Second) of Torts § 402A, Comment g). "Unreasonably dangerous" means dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its

---

[3]The record shows that a net enclosure, which encircles the trampoline jumping surface and significantly diminishes the likelihood of a jumper falling off the trampoline (particularly when she is one of several jumpers), and, according to Celmer, significantly reduces the likelihood that a user's leg would slip through the opening between the trampoline mat and the supporting springs attached to the frame of the trampoline (as Celmer's leg did) was generally available to the industry at the time the Zacharias purchased their trampoline and costs approximately $150. Indeed, the Jumpking trampoline at issue here was offered for sale with an *optional* enclosure but the Zacharias elected not to purchase one.

characteristics." *Id.* (quoting Restatement (Second) of Torts § 402A, Comment i).

When determining what is "reasonably safe," Maryland courts consider the following factors: (1) the existence of an alternative design that is safer than the design used in the suspect product; (2) the technological feasibility of manufacturing a product with the alternative design at the time the suspect product was manufactured; (3) the availability of the materials required to produce the alternative design; (4) the cost of production of a product that incorporates the alternative design; (5) the price to the consumer of a product incorporating the alternative design; and (6) the chances of consumer acceptance of a model incorporating the plaintiff's suggested alternative design. *Phipps*, 278 Md. at 346 n.4; *Nissan Motor Co. Ltd. v. Nave*, 129 Md. App. 90, 120 (1999).

Jumpking argues vigorously that the warnings provided on its product precludes a reasonable finding by a jury that its trampoline was defective and unreasonably safe.[4] It

---

[4] Indeed, Jumpking relies on several cases to argue that the danger of trampolines is "open and obvious," Def.'s Resp. to Mot. for Summ. J. at 7, and that therefore warnings are not even required. However, those cases are distinguishable from the instant case because those plaintiffs were exposed to risks other than those to which Celmer was exposed when she engaged in multiple jumping and then undertook to dismount the trampoline while others continued to jump. In *Williams v. Lombardini*, 238 N.Y.S. 2d 63 (1963), *Anderson v. Weslo, Inc.*, 906 P. 2d 336 (Wash. App. 1995), *Barnes v. Fulton*, 446 S.E. 2d 212 (Ga. App. 1994), and *Burchinal v. Gregory*, 586 P. 2d 1012 (Colo. App. 1978), each plaintiff (or child of the plaintiff) was injured while attempting a flip. In *Ford v. Narin*, 717 N.E. 2d 525 (Ill. App. 1999), and *Sollami v. Eaton*, 772 N.E. 2d 215 (Ill. 2002), the trampoline users were injured when they attempted to "rocket jump." As mentioned above, the foreseeable danger of trampoline stunts can vary. While it may be obviously dangerous to flip or to "rocket jump" on a trampoline, the latent danger of multiple jumping is not so apparent. For that reason, these cases do not compel a grant of summary judgment in this case. Indeed, in *Liesener v. Weslo, Inc.*, 775 F. Supp. 857 (D. Md. 1991), discussed in text *infra* p. 8, Judge Smalkin specifically declined to forecast the Maryland Court of Appeals' views on the issue of whether the risk of serious injury attendant to the use of a trampoline was "open and obvious." *Id.* at 861 ("Thus, the Court
(continued...)

contends that if its warnings are adhered to, then the trampoline is reasonably safe for use.[5]

_____

[4](...continued)
cannot say that the weight of authority supports the proposition that the risk here was so obvious that it need not have been warned against in the first place.").

[5]Jumpking also argues that it cannot be held strictly liable because Celmer misused the trampoline when she jumped on it at the same time as two other people. In Maryland, misuse is not an affirmative defense; rather it can be used to negate one of the elements of a product defect claim, such as causation and "defectiveness." *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 597 (1985). The test for misuse is one of foreseeability. If "the product is not unreasonably dangerous when used for a purpose and in a manner that is reasonably foreseeable, it simply is not defective, and the seller will not be liable." *Id.* at 595-95.

Here, it is not clear-- at least not as a matter of law-- whether the trampoline was used in a manner that was not reasonably foreseeable. On the surface, it seems quite foreseeable that two or more kids would be prone to jump on a trampoline at the same time. The foreseeability that such is the case, moreover, is underscored by the fact that Jumpking goes to some effort to warn of the risks of multiple jumping in its brochures, owner's manual, and warning labels. One could certainly argue that, if multiple jumping were not foreseeable, Jumpking probably would not need to warn of the dangers of it. Furthermore, the plethora of personal injury cases which have arisen in the last two decades from trampoline use and cited in text, *infra* pp. 8-10 and *supra* n. 4, puts the lie to the contention that multiple jumping is "unforeseeable." Accordingly, the question of whether multiple jumping was foreseeable is for the jury.

Jumpking also argues (as does Zacharia) that Celmer assumed the risk of injury when she chose to get on the trampoline and jump with two other people. While Maryland recognizes assumption of the risk as an affirmative defense to a strict liability claim, *Phipps*, 278 Md. at 346, the record simply does not establish that Celmer assumed the risk here *as a matter of law*. In order for a plaintiff to assume the risk, she must "unreasonably proceed to use a product despite a known risk or danger." *Id.* The defendant must show the following: (1) the plaintiff had knowledge of the risk of danger; (2) the plaintiff appreciated that risk; and (3) the plaintiff voluntarily encountered the risk of danger. *Faith v. Keefer*, 127 Md.App. 706, 747 (1999) (citing *ADM Partnership v. Martin,* 348 Md. 84, 90-91 (1997)). Courts are to employ an objective test. *Id.*

In this case, drawing all reasonable inferences in favor of Celmer as the nonmovant, it is clear that the question of whether Celmer (or any reasonable 16-year-old) knew of and appreciated the risk of multiple jumping on a trampoline is for the jury. Celmer had never been on a trampoline and she never received instruction from an adult on the hazards of multiple jumping. It is difficult, if not impossible, to say-- as a matter of law-- that a person of normal intelligence in Celmer's position would have known that she risked injury when she climbed on the trampoline with two other jumpers and then attempted to remove herself from the trampoline while those others continued to jump. *See Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 435 (S.D.N.Y. 1999) ("[I]t is undisputed that plaintiff's background, skill, and experience were those of a complete novice, factors which the jury may appropriately include in its evaluation of what he understood of the
(continued...)

Furthermore, Jumpking contends, there are no industry or government standards mandating the use of an enclosure as a supplement to the warnings printed on the trampoline and in the owner's manual.

Although there is sparse strict liability case law on trampolines in Maryland, other courts have given considerable attention to such claims. To be sure, there have been many trampoline injury cases, *see Annot., Products liability: trampolines and similar devices,* 76 A.L.R.4th 171, and the results have not always been in harmony. *Compare, e.g.*, *Bryant v. Adams*, 448 S.E. 2d. 832 (N.C. App. 1994) (finding that a question of fact existed as to whether the risks of jumping on a trampoline were open and obvious), *review denied*, 339 N.C. 736, 454 S.E.2d 647 (1995); *Bagnana v. Wolfinger*, 895 A.2d 1180 (N.J. Super. A.D. 2006) (concluding that the obviousness of the risk of trampoline use was a question for the jury) *with Crosswhite v. Jumpking, Inc.*, 411 F. Supp. 2d 1228 (D. Oregon 2006) (holding that as a matter of law trampolines are not unreasonably dangerous); *Sollami v. Eaton*, 772 N.E. 2d 215 (Ill. 2002) (holding that risk of harm from trampoline use was "open and obvious" and owner had no duty to warn or to supervise trampoline use).

One federal district court applying New York law denied a manufacturer's motion for

---

[5](...continued)
general risks of trampolining and the specific risks of jumping off-center); *Albritton v. Kiddie, Inc.*, 591 N.E.2d 781, 783 (Ohio App. 1990) ("a review of the pleadings, answers, interrogatories, depositions, and affidavits reveals the existence of genuine issues of material fact as to whether appellant... had knowledge of the dangers involved in exercising upon the trampoline, whether the trampoline was patently dangerous, and whether appellant . . . had voluntarily exposed himself to a dangerous condition through exercising upon the trampoline."); *but see Sollami*, 772 N.E. 2d at 222-23.

summary judgment when a 24-year-old, on a trampoline for the first time, jumped off center,

bounced off the surface and broke his neck. The court stated the following:

> I cannot conclude that a trampoline of circular design is reasonably safe as a matter of law under the law of New York. The courts have made it clear that as a rule this question is one for the jury, and involves an extensive multi-factor balancing test. That test involves evaluation and weighing of large amounts of factual information, as well as the credibility of different witnesses and the weight to be given to various evidentiary submissions which raise genuine issues about conflicting viewpoints. It also involves questions of judgment and reasonableness, such as the utility of a trampoline to society, the question of how many injuries are "reasonable," and the reasonableness of various pricing structures for potential safety features, that are particularly within the providence of the jury.

*Anderson v. Hedstrom Corp.*, 76 F. Supp. 2d 422, 456 (S.D.N.Y. 1999).

The reasoning in *Anderson* may be contrasted with that of the one reported case

applying Maryland law to the area of trampoline safety. In *Liesener v. Weslo, Inc.*, 775 F.

Supp. 857 (D. Md. 1991), the court considered the case of a 17-year-old boy who did a flip

on a circular trampoline and ended up a quadriplegic. The court held that the warnings on

the trampoline were adequate as a matter of law, even if they were general warnings. The

court stated that a manufacturer does not have to warn of "every mishap or source of injury

that the mind can imagine flowing from the product." *Id*. at 861.

*Liesener* is distinguishable from the instant case in two very important respects. First,

the risk of doing a flip on a trampoline plainly is more obvious than the risk of double

jumping on a trampoline. In fact, children are often afraid of doing flips, whereas children

(and indeed, many adults) are unlikely to sense any intrinsic danger in jumping on a

trampoline with one or more other persons. This is particularly true in respect to the risk of injury visited on a co-jumper who, like Celmer, elects to dismount the trampoline while others continue to jump.[6]

Second, and more importantly, the issues in *Liesener* (where the accident occurred in 1989) did not include the question, squarely presented here, of whether, despite the use of warnings, the failure to include an enclosure to enhance safety rendered the trampoline defective and unreasonably dangerous. Indeed, no case cited by the parties or uncovered by this court presents that issue.

In any event, Celmer argues that the design of the Jumpking trampoline was defective and it was rendered unreasonably dangerous because an ordinary consumer would not contemplate the danger of multiple jumping invariably associated with it, and that the use of an enclosure would significantly reduce the risk of injury of the sort suffered by Celmer. Unlike other products in which courts have rejected such arguments, a trampoline is a recreational device that is often marketed for use by children, who are, as in this case, using the trampoline without the adult supervision Jumpking insists in its warnings is critical. It is not a gun or a power tool, devices not likely to be left intentionally available for use by

---

[6]Although not raised by the parties, the court queried counsel extensively at the hearing on the issue of proximate cause. Arguably, Celmer's *injuries* were not caused by multiple jumping, even if *her first effort to remove herself from the trampoline* was thwarted by the effects of the jumping of the other children. She had come to rest astride the frame of the trampoline, and she injured herself as she attempted to lift herself off. On the other hand, as plaintiff contends, a jury could perhaps conclude that the activating cause of the injury to her knee was her inability to dismount from the trampoline without being thrown down by the continued jumping of the other children. As these issues have not been teed up by the motions for summary judgment, I need not consider them here.

children. *Cf. Halliday v. Sturm, Ruger & Company, Inc.*, 368 Md. 186 (2002) (finding that the dangers of a handgun were obviously apparent to any purchaser). It seems clear that, given the availability of an enclosure at a reasonable cost, a jury could reasonably find that the Jumpking trampoline was dangerous beyond an ordinary consumer's expectations insofar as it was manufactured and marketed without such an enclosure.

Specifically, plaintiff asserts that a net surrounding the jumping surface of the trampoline would have prevented the injury to Melissa Celmer.[7] Indeed, as the plaintiff points out in her brief, an enclosure arguably would have prevented Celmer from falling into the spring area of the trampoline. In addition, it would have given her something to grab onto as she was slipping. *Cf. White*, 411 F. Supp. 2d at 1231-32 (dismissing a strict liability claim because, *inter alia*, plaintiff did not offer an alternative design that would have prevented injury from flipping). At bottom, I am persuaded that the issue of whether the absence of a net enclosure, arguably a reasonable, cost-effective way of preventing injury and rendering the Jumpking trampoline reasonably safe, rendered the trampoline defective and unreasonably dangerous, is a question for the jury under Maryland's "consumer expectations test," and for that reason I shall not decide the issue here as a matter of law.

## B.

Celmer also alleges that the warnings that came with the trampoline were insufficient and inadequate to convey the potentially dangerous nature of the equipment, and in

---

[7]*See supra* n. 3.

particular the danger of multiple jumping. A proper warning should inform consumers of how a product can be used to mitigate risk. *Mazda Motor of America, Inc. v. Rogowski*, 105 Md.App. 318, 331 (1995).  In addition, a product should not have so many warnings that the overall effect of the warnings is diluted. *Id*. "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Simpson v. Standard Container Co.*, 71 Md. App. 199, 207-07 (1987) (quoting Restatement (Second) of Torts, § 402A, Comment j).

In *Moran v. Faberge*, 273 Md. 538, 553 (1975), a case in which a woman was burned by a bottle of highly flammable cologne, the Maryland Court of Appeals gave some guidance as to how a court could determine the sufficiency of warnings. "[I]n making its determination it is proper for the trier of fact to consider both the prior history of the product (such as the evidence in this case which showed a 27 year accident free history of Tigress cologne), and the extent of the manufacturer's adherence to industry-wide standards and practices." *Id*. (citations omitted); *Lightolier v. Hoon*, 387 Md. 539, 558-59 (2005).

Applying this test to the instant case, I am persuaded that Jumpking's warnings are sufficient and adequate as a matter of law. *See Liesener*, 775 F. Supp. at 861. Although Celmer cites numerous sources that seem to indicate an overwhelming number of injuries resulting from trampoline use, including the Consumer Products Safety Commission, the American Academy of Pediatrics, the Association of Orthopedics, and the United States

Gymnastics Federation, the mere citation of statistics regarding prior accidents is insufficient to support a contention that the sufficiency and adequacy of warnings is a jury issue. Jumpking points out that the warnings on its products conform with industry standards, including the American Society for Testing and Materials Standards.

I agree with Jumpking that the adult purchasers and owners owe a significant duty, one the law should enforce, to those who use their trampolines to carry out their responsibilities to ensure safe usage. Moreover, while I agree with plaintiff that the warnings could certainly be improved to make them more prominent and visible to the novice or casual user, I am persuaded that the Maryland Court of Appeals would find the warning placed in three locations around the circumference of the Jumpking trampoline ("Do not allow more than one person on the trampoline. Multiple jumpers increases chances of loss of control, collision and falling off. This can result in broken head, neck, back and legs.") adequately notifies a reasonable 16 year old that danger lurks from multiple jumping. Accordingly, Jumpking is entitled to judgment as a matter of law as to the failure-to-warn claim.

## C.

The conclusions I have reached here, that the Jumpking trampoline gave sufficient and adequate warnings but could nevertheless be found by a reasonable jury to be "defective" and "unreasonably dangerous" under Maryland law are not mutually exclusive or even contradictory. "[W]arnings aimed simply at avoiding consumer carelessness should

not absolve a manufacturer of the duty to design reasonable safeguards for its products."
*Hood v. Ryobi America Corp.*, 181 F.3d 608, 612 (4th Cir. 1999) (applying Maryland law)
(citing to Restatement (Third) of Torts: Prod. Liab. § 2, cmt. 1, illus. 14 (when warning
could not eliminate the possibility of accidental contact with a dangerous shear point, decal
declaring "keep hands and feet away" does not bar a design defect claim)). What is telling
in the instant case is that a jury could find Jumpking's warnings sufficient, yet the same jury
could also find the Jumpking trampoline to be defective for not including a reasonably-
priced safety enclosure. In other words, a jury could reasonably find that Jumpking knew
that the warnings would be overlooked, ignored, or not appreciated by significant numbers
of unsupervised minor users of its product, including novice 16-year-old users, thereby
rendering the product defective and unreasonably dangerous to such users. *See Klein v.
Sears, Roebuck and Co.*, 92 Md.App. 477, 489 (1992) (holding manufacturer liable for saw
without safety guard despite numerous warnings that, if followed, could have prevented
injury).

*       *       *

In sum, because Celmer has shown there exist genuine disputes of material fact as to
whether the Jumpking trampoline was defectively designed rendering it unreasonably
dangerous to users such as plaintiff Celmer, and because Jumpking's defenses are also
legitimately disputed by plaintiff, Celmer's strict products liability claim survives summary

judgment.[8]

## IV.

Celmer also brings a claim against Zacharia for negligence in failing to supervise the children's use of the trampoline. Zacharia responds by asserting that Celmer was a bare licensee (rather than a social guest or licensee by invitation) and therefore the only duty she owed Celmer was a duty not to willfully or wantonly cause harm. I must reject this assertion, however, because the legal issue of Celmer's status in relation to Zacharia's property-- and the duty associated with that relationship-- poses, at the very least, a genuine dispute of material fact that must be resolved by a jury. Therefore, with respect to this claim, the defendant's motion for summary judgment must be denied. I explain.

In Maryland, a licensee by invitation is a social guest to whom the "possessor owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable." *Baltimore Gas and Elec. Co. v. Flippo*, 348 Md. 680, 689 (1998). A bare licensee, on the other hand, "is a person on the property with permission, but for his or her own purposes; the possessor owes no duty except to refrain from willfully or wantonly injuring the licensee and from creating new and undisclosed sources of danger without warning the licensee." *Id*. (citing *Wagner v. Doehring,* 315 Md. 97, 102 (1989)). As the Maryland Court of Special Appeals recently reiterated:

---

[8]Jumpking argues that, under Maryland law, Celmer cannot recover pre-age of majority medical expenses. While there certainly is persuasive case law to support this argument, the court reserves judgment on this issue due to a lack of facts pertaining to when the medical expenses occurred, and whether Celmer fits into an exception to this rule.

> [T]he implied invitation theory is objective and does not rely on any mutual benefit . . . . Rather, the circumstances control, such as custom, habitual acquiescence of the owner, the apparent holding out of the premises for a particular use by the public, or the general arrangement or design of the premises. The gist of the implied invitation theory is the distinction between mere passive acquiescence by an owner or occupier in certain use of his land by others and direct or implied inducement.

*Deboy v. City of Crisfield*, 167 Md.App. 548, 555-56 (2006) (citations omitted).[9]

In *Flippo*, the Court of Appeals of Maryland found that a boy who climbed a tree in another boy's yard was a social guest. The court stated:

> [I]t is clear that Flippo was a licensee by invitation on the Gaineses' property. As the Gaineses' social guest, Flippo had a right to be on the Gaineses' property. In addition, Mrs. Gaines testified that she was aware that children occasionally climbed the particular tree that Flippo was climbing when he was injured. Furthermore, there was some evidence at trial that Flippo had implicit permission from the Gaineses to be in the tree on October 1, 1992. Thus, Flippo was not a trespasser to the Gaineses' property when he climbed the tree.

*Baltimore Gas and Elec. Co. v. Flippo*, 348 Md. 680, 689 (1998).

*Flippo* is similar to the instant case. Celmer has marshaled evidence sufficient if credited to show by a preponderance of the proof that she was not a bare licensee. Celmer claims that the neighborhood kids were regularly allowed to play in the Zacharias' backyard. In the past, she had used the Zacharias' slide and swings. In addition, she was friendly with

---

[9]As the vast majority of the "implied invitee" cases arise in a commercial context, it is not surprising that the test is customarily phrased in terms of "the apparent holding out of the premises for a particular use by *the public*." *Deboy*, 167 Md.App. at 555. But in the case at bar, a proper jury instruction would need to focus the jury's attention on whether Zacharia held out her backyard and the trampoline (together with the other recreational devices maintained there) for "a particular use by neighborhood children."

the Zacharia children, who according to her version of events, were in the backyard at the time of the injury (although not on the trampoline). In addition, Zacharia stated on deposition that she was aware that Celmer was in the backyard on May 1, 2000. Based on these facts, there is at the very least a factual dispute as to whether Celmer was a licensee by invitation, i.e., whether viewed objectively, *Deboy*, 167 Md.App. at 555, Zacharia impliedly invited Celmer and other neighborhood children to use the recreational devices found in the Zacharia yard, on the one hand, or was simply a bare licensee because Zacharia merely acquiesced in such use, on the other hand.

Emphasizing that she gave only *consent* or *permission* to neighborhood children as to their use of the backyard trampoline, Zacharia correctly argues that under Maryland law "*consent*" does not equate to an "*invitation*." Nevertheless, as explained herein, the line between these two concepts is, on this record, one to be drawn by the jury and not by this court as a matter of law. "Permission does not preclude a finding that other words or conduct implied an invitation." *Howard County Bd. of Educ. v. Cheyne,* 99 Md.App. 150, 159, *cert. denied*, 335 Md. 81 (1994).

Consequently, drawing all inferences in favor of Celmer as the nonmovant, and assuming for purposes of the motion for summary judgment that Celmer was, impliedly, an invited guest, she was owed a duty of reasonable care, and the Zacharias would have had to warn her of not easily discoverable dangers. *See* Restatement (Second) of Torts § 342. The issue, then, becomes whether the danger of multiple jumping was such that Celmer

reasonably was unaware of it, thereby imposing a duty at law on Zacharia to warn and/or to supervise Celmer's trampoline use.

A New Jersey court recently considered this very question in *Bagnana*.  In that case, an adult was double jumping on an Jumpking trampoline when she injured her knee. The plaintiff, like Celmer here, claimed she did not have any experience with trampolines and she was unaware of the dangers of multiple jumping. 895 A.2d at 1184-85. In addition, she had seen others multiple jumping on the trampoline while the owner looked on. Describing the danger of double jumping as a "subtle danger," the court denied the defendant's motion for summary judgment. *Id*. at 1184. The court concluded that "[a] reasonable jury could conclude that defendant landowners knew or should have known that their trampoline posed an unreasonable risk of danger to plaintiff, that the risk was not obvious, that plaintiff did not recognize the danger, and that defendants breached their duty to either disclose or remove the danger." *Id*. at 1186.

So, too, in the instant case. Celmer says she had never been on a trampoline, and she says she did not realize that double jumping was dangerous. It is therefore a question for the jury (if it finds, as it reasonably could find on this record, that Celmer was a licensee by implied invitation) whether Zacharia is liable for failing to supervise and/or to warn her of the dangers of the trampoline, and in particular the danger of multiple jumping. Zacharia's

motion for summary judgment shall be denied.[10]

V.

Celmer has satisfied her burden of showing that there exist genuine disputes of material fact as to the motions for summary judgment. Therefore, the motion for summary judgment filed by Jumpking shall be granted in part and denied in part; the motion filed by Zacharia shall be denied. An order follows.

Filed:  May 26, 2006                                                  _____/s/_____
                                                                     ANDRE M. DAVIS
                                                                     United States District Judge

---

[10]Zacharia also argues (i.e., to "preserve the issue") that she cannot be held liable under a public recreation exemption from liability for personal injury. *See* MD. CODE ANN., Natural Resources § 5-1104. This statute, however, is inapplicable because the Zacharias clearly were not holding their land open for public use as envisioned by the statute. *See id*. at § 5-1102(a).